At all. Oral argument is not to exceed 15 minutes for the plaintiffs and 15 minutes to be shared by the defendants. Mr. Ellison, you may proceed for the appellants. Good afternoon. Philip Ellison appearing on behalf of the appellants. I'm preserving three minutes for rebuttal. It's a little bit of a long speech, but I'm going to try to keep it short. It's always rough being the last one of the day, but here we are. This case involves an issue involving the right to have access to audio recordings of court proceedings. I think the answer to this question is a two-step question, and step one is already answered for this court. The first question is, is it a court record? Michigan law provides the answer for that. MCR 8.119F that says court recordings are court records and they're subject to access pursuant to, as you scroll down through the rule, the local administrative order. I would just note for the court's own records, if you do look up the current rule as it's today, it's been amended a few times since this case started five years ago. The current rule is at MCR 8.119H2, or H, let me make sure I get that right, H8, excuse me, on that. So it used to be F, but now it's H8? No, F remains the same. The local administrative rule process went from H2 to H8. So if you look up the court rules on the court's website, there will be an adjustment there for that in light of that. Some COVID issues were added to the court rule. So the question right now then is, given the fact that these audio recordings are in fact court records, is the local administrative order that provides the control of these access consistent with the press enterprise test? And the answer is very clear. The answer is that they're not. Press enterprise test, and you can call this, different courts have called it different things. I think the best one is Judge Gwynne's concurring opinion in Tri-County Wholesale, which I've cited in that brief, outlines how this court is supposed to analyze when a court can deny access consistent with the First Amendment for access to records. So my understanding is that you got the transcript, which was taken from the audio, is that correct? I believe so, yes. I don't know that for certain, but I believe so, yes. Where else would the transcript have come from? The court reporter could have been in the courtroom at that particular time. But as I understand it, a lot of them in Michigan use it from the audio recording. Okay, so why wouldn't it be enough for you to have one form of the record of what transpired in the courtroom, i.e. the transcript? The transcript and the court recording are both court records. It's our assertion on behalf of my clients that those transcripts contained errors in them. And what's important, I guess I want to make sure the court understands, is that we're not seeking these recordings to go back and reopen an appeal or appeal purposes for a pending case. All of the cases in the state court proceedings are completed. What we're asserting here is the denial of a First Amendment right of access. So you're not going to try to correct the court records in any way? We don't know what we're going to do with them yet, because we don't know whether or not... You couldn't correct the record, could you? There is a potential process that if, in fact, the records are wrong, and it was a material wrong, that there could be a potential some way to reopen the case. Okay, so that's not... But the point, I guess... The case really isn't done in that sense. I'm not saying which way that cuts, I'm just saying it's not that your interest here is a wholly academic one. Correct. Okay. Correct. And I want to be clear, I want to be fair about this, because if, in fact, the audio recordings confirm that the transcripts are correct... Yeah, but were there not also ways prior to the conclusion of all proceedings to correct the record? That is, if you believe the judge said, well, you could have gotten another court reporter, I presume if I'm a lawyer and I get a transcript and the transcript says I said things that I just didn't say, I can make some kind of motion to correct the record, can't I? But neither of my clients realized that those transcripts had errors in them, or at least potentially had errors in them, until after their state court proceedings had closed. So they or their lawyers or their family, nobody looked at them? Is that really... Their lawyers apparently looked at them, but they did not themselves. And the question here that... Did they ask for the audio during the course of the state court case? No, they did not. Interestingly, both of these clients came to my office. I don't think I've been before the two of you. I know I've been before Judge Griffin. I bring these kind of weird, unusual cases in this respect. Both of these cases came to my office independent of each other, completely independent of each other, with two different courts in two different parts of the state of Michigan. And so one of the things that I'm trying to establish with this court case is that an audio recording doesn't have some sort of special sancto-sanct ability to be outside the purview of being reviewed. It is a court record. Well, because it's a court record, but what about... Are not other things in the proceedings records? If a gun is introduced in evidence, isn't that a record? If a picture of someone is introduced, if the drugs are introduced, do you have right of access to all of those, even if you were in the courtroom and saw them? And you say, well, I want to look at that gun later on. Is that a record? I think in that respect, then, if someone was trying to seek access, the standard by which press enterprise... I guess let me back up. I don't know the answer to that question. I'll just be frank. The gun question is one. I don't know how to answer that question. Obviously, we wouldn't want to be handing guns out to members of the public, obviously. To be a little nicer, as I say, you've got a photo, which might have been altered or have metadata. You'd have a computer disk that was introduced. I'd like to get that disk and see if it really says what the government said it says. The court can enact standards that would be consistent with access to records if it meets the press enterprise test. And the press enterprise test says that, and I want to make sure I wrote down the language here, is that the First Amendment right of access extends to dockets, records, pleadings, exhibits, and it establishes a presumption that public access can only be denied if it's overcome by specific on-the-record findings that public interest in access to the information is overcome by specific and compelling showings of harm. So, in this instance, we're talking about records. Obviously, maybe the gun is not the best example to fit this into. But these are records, and the key part of all of this is that the judge below seemed to base his decision on the fact that these audio recordings are not court records. MCR 1.119F directly holds the opposite of that. Michigan Law directs these are court records. And because they are court records, there's a presumptive open access to them unless you meet the press enterprise test. Now, when my co- So, the result then, if we were to say that in this case, the audio recordings are records, if the law of a different state didn't have that provision, then we would say they are not within the First Amendment. Is that correct? I think then what you would do is that you would look to another That's why I talked about this being a two-step process when I opened my remarks here. Step one would be if state law doesn't dictate that these are court records, then you would use, I think, the tradition test that's been adopted by many other courts as being whether or not that these are court records. But as long as the state law says audio recordings are court records, then your position is there's a First Amendment right to get those records, wholly apart from the state law, as long as they're characterized as records. Correct. And I don't think you need to go any further than that for purposes of this particular case. Now, if you had a case, for example, where you wanted copies of I'm just going to pick an outlandish example. You wanted the parking validation stubs of the jurors at a jury trial, right? Those aren't identified as court records. What you do would be the normal traditions test. But here, state law already dictates that these are, in fact, court records. And by them being court records, what we have by extension is we go automatically to step two. And step two would be is the process by which these records are excluded and not being considered meets the press enterprise test that's been laid out by the U.S. Supreme Court. How would you characterize the press enterprise test? It's the best example of this. And I would ask the court to cite it in our brief. But it is Judge Gwynne's concurring opinion in Tri-City Wholesale 565 Federal Appendix at 490. What that says is, if you'd like me just to read it, I'd be happy just to read it to you. I was trying to get a black letter statement by you of what the press enterprise test is. The press enterprise, I'm going to steal Judge Gwynne's statement because I think it's perfect. The First Amendment access right extends to court dockets, records, pleadings, exhibits, and establishes a presumption of public access that can only be overcome by specific, on-the-record findings that the public's interest in access to information is overcome by specific and compelling showings of harm. And he actually cites, the actual citation to that quote is press enterprise. Okay, and so the district judge here, you're saying, did not apply Judge Gwynne's test, which he took from press enterprise. I read the lower court judge's opinion to say that these aren't even court records. And clearly that is in direct contradiction to 8.119F. And he went no further than that. So could a state have a rule that sometimes there are going to be audio tapes of what happened and sometimes those are going to be transcribed. And if they are transcribed, the First Amendment right of access applies only to the transcripts. I think you could, but I would caution that is that the question would be if a state, for example, in an unconstitutional manner said these particular records, which have traditionally, and that's where the traditions test comes in, traditionally have been available to the public. For example, say that the state passed a rule that said all of the docket sheets in the state are no longer accessible by the public, because we're going to deem them not a court record. The traditions test would require that that rule be overturned on First Amendment grounds. That didn't happen here. But that didn't happen here. I think what makes this case, I think, incredibly simple is the fact that Michigan has designated these as court records. And I would ask the court to apply that test accordingly. Would it satisfy you, say there's one audio record, would it satisfy you for the court clerk to make a copy of the audio record and give you the copy? Absolutely. Absolutely. And that's what we ask for. Specifically, if you look in the record, that's specifically what we ask for. Very briefly, in my last 20 seconds, I did bring a challenge, and I will address this probably on reply because I anticipated my opponent was going to bring up qualified immunity. I am asking this court to find that nominal damage is not covered by the qualified immunity standard, and I will address that in reply because I'm suspecting we're going to hear a lot about qualified immunity from my brother counsel. Unless the court has any questions, I've reserved my rebuttal. Thank you. Mr. Curlew, are you going first? I am. I'll have the first seven and a half minutes, and my colleague will have the other. I have to say, Mr. Ellison certainly called it right. One, he does bring a lot of odd cases, but he's always a professional and accommodating in doing so. And he does right. I am going to talk about qualified immunity because I represent Mead and Heffern, the two court administrators, and I think the real beef is with the rulemaking authority. They're not the authorities who make the rules. They have a chief judge in their courts who signs this order telling them what to do. It is approved by the state court administrator's office, which is really an arm of the Michigan Supreme Court for overseeing the courts. They have no authority to do otherwise. I mean, if the chief judge of this court were to enter an order, the expectation I'm sure would be that the clerks and the administrative personnel would follow that order, unless until there was some other judicial ruling to the contrary. As far as Mead and Heffern are concerned, they're just doing what was signed by their judges. It's not a case of- So what does the state rule and or the chief judge's rule say to Mead and Heffern? You may not give a copy of the audio record. Yes, that's exactly what it says. I actually have the orders were submitted into the record in the language of the two rules. The one is that R71-6, paragraph 7, or excuse me, number 8, copies of court recordings are not available. The other one is R71-3, access to court recordings is not permitted, based on the rule 8 put out by the state court administrator's office. And all they did was parrot the rule that their judge had signed. And certainly the case law says- I mean, it's one thing you can say, you know, the old Nuremberg defense, I was just following orders. Well, that doesn't always work with a supervisor. It doesn't always work with a statute. But it certainly works when it's a judicial order. I mean, once a judicial order is made, that order stands unless and until a higher court changes it or the judiciary that entered that order reconsiders it. Otherwise, orders from courts become paper. Who should have been the defendant? Well, the defendant obviously is a state court administrator that's been sued. It seems like a good candidate. Sorry. That's the proper defense. Right. But the point is- Right. From my perspective, the point is two court administrators who are following a judicial order, they're not the ones who should be liable for what happened. But if the order said kill the defendant, obviously that defense wouldn't work. That might be a bit of a stretch. But, you know, obviously I don't think an order would like to be entered. But I argued a case just recently. There were complaints that, well, this person was innocent and was ordered to the jail, and the jail officers took him in. The point was, well, yes, but they had an order. They had to take him in. They couldn't make the judicial determination that he was actually innocent despite his attestations. Same thing here. I mean, orders are orders. If court orders are to have meaning in our system, they've got to stand and be obeyed by those that are subject to them. Another way of putting it, is there any reason that you can see from your clients why audio recordings should not be given to a party who asks for them if there were not such a rule? I have no idea what the reasoning behind the rule is, why the chief judges of these courts chose it, why the state court administrator makes it available. Perhaps my colleague can address that. That was never discussed, to my knowledge, in the record. It's simply they're applying the orders that were given by the judges in their courts. So your position is your clients are not the proper parties? Correct. Or certainly not the liable parties. Yes, let's hear from the next one. I think we all agree. Thank you for representing your clients. Thank you. We'll give Mr. Beach the remaining time. Thank you very much, your honors. And may it please the court, I'm Brian Beach. I'm here on behalf of Thomas Boyd, who is the state court administrator. So I think I'm just going to start out by trying to respond to your questions about the proper party here. I think it is a little difficult because my client is a state court administrator. And he drafts or oversees the drafting of the local model rules. In this case, the local model order for, or I'm sorry, the local model, sorry, the local, the model order 8 concerning court records, and in this case, the retention of the video or audio recordings. And in that model order, a choice is given to the trial courts. So my client, in drafting the order, is not mandating that the trial courts either keep the videos or come up with a system for responding to requests. So I guess the complication here is that the model order itself is based on the court rules. And my client and the state court administrator's office doesn't draft the court rules. So in fact, every county in Michigan could have decided to make these records available. Some counties do choose to make. But not all. Correct. Obviously, they wouldn't have a lawsuit. So from your point of view, who should they be suing? Well. Or is it? That's where, again, it gets a little complicated. Is he really trying to say that this portion of the rule is unconstitutional? His quarrel is with the court rules, and specifically 8.119H. So who should he sue over the court rules? Who's the proper defendant here? Well, the court rules are drafted based on a process involving the state bar. Michigan Supreme Court approves the court rules, right? Correct. That would be the final say would be the Michigan Supreme Court. So I mean, who's the proper party? Well, again, if the issue is that the court rules give the local courts these options, it certainly is not the state court administrator who is effectual to the court rules. So doesn't his actual beef is caused by a ruling made by the local chief judge? Correct. Okay. So maybe in those two counties, what, Bay County and the other county? Bay County, correct. I'd rather get around, get past this who's the proper party and actually get to the substance. Does the First Amendment compel the courts to not only do a transcript of the proceedings but also to release the audio recordings? I mean, I think it's kind of a significant issue, and Mr. Ellison does raise significant issues every once in a while. Can you talk about the merits and why it does or does not compel the release? And that's the other aspect of this case is that there is no case law that supports that a transcript on top or rather that a video recording or an audio recording on top of a transcript is required. The most natural defense is it's a duplicate of the proceeding. You already have one recording of the proceeding, which is transcribed, and this is redundant. It's duplicate, and it's really speculation that maybe there's errors and this or that. And if I could point something else out, Your Honor. Okay. Go ahead. Kind of one of the other aspects about the specific facts in this case is that the parties were actually present at the hearings. So the cases that are cited by counsel all involve, almost all of them involve, you know, cases where the press was completely shut out of a hearing or a trial, and there was complete denial of access. People often don't remember exactly what was said, and the transcript might, in fact, have significant errors. We all know that court reporters perhaps do not accurately transcribe what happens. So if the audio exists, why isn't there a First Amendment right to the audio? Just like there's a First Amendment, hypothetically I should say, there's a First Amendment right to the docket sheet. Obviously, you can go through, if you're a party, whether you filed a complaint and whether the other side filed an answer or such, but don't you have a right to that public record, which is the docket sheet, or here, the public record, which is the audio? I think one of the other facts of this case, and I don't know if this is going to answer your question, but I think counsel oversimplified the Michigan court rules a little bit, that the audio recordings in the court rules, they are called court records, but they are not considered case records. So they are kept in a different category, or if you read, and I would point to court, you know, this is all in my brief, but that specifically, and I don't want to get too deep into it, but that under MCR 8119, D&E, there are specific documents that it lists. But I would come back and say, I don't really care what the state of Michigan calls the audio recording, whether they call it a court record or a case record, that if I'm talking about a constitutional right, that people who are involved in cases, hypothetically I would say, have a right to documents that are filed or exist in a particular case when they are a party to the case. And we can then say the public has the same right, but here we have a party. The party has a First Amendment right to know what the basis for a decision was, and the audio would presumably be the best record of what actually happened. Memory is terrible for most people, and the transcript could have errors. How would they know that it has an error? They might say, oh, I thought I said it wasn't the case that Johnny hit Susan, but the transcript says Johnny hit Susan. So, you know, at least I've got that big issue there. But there are lots of things where you wouldn't know. Sorry that I've gone on here, but the question is whether there is a First Amendment right to the audio, and why not? Judge, I guess the way I would respond to that is, in the Michigan Court of Rules, there's any number of things that are not treated the same as the actual record in the case file. And the audio recording itself is just something that is used to create the transcript. And I would argue that there is a First Amendment right to the transcript that the final version that is created and is signed off as the official transcript. The audio itself is just a tool that is used to create that transcript. And obviously, for example, the state of Michigan, that deviates greatly in terms of the quality of that. Some of the courts still have the old-fashioned court reporter. Some of the courts have a higher level video system. Some have audio. There is a great deal of, I guess, across the state of Michigan in the types of the various technologies that the court has. What would be, then, that a litigant such as the person here, or the two people here, does have a right to something that has the words of what happened in the courtroom. That something could be a transcript, or that something could be an audio, or it could be a stenographer product. But that is what the First Amendment right is to. And that Michigan gets to decide which of the ones the person has a right to get. Is that a fair statement of your rule? Judge, yes. I think to the extent that, in the case of my client, the state court administrator leaves it up to the court in terms of what technology they actually had. And that is what we are getting into here. That is an area that is constantly changing. Really saying intermediate steps in a final project, just like my notes here. My opinion may be different than the notes I have here. Because your stenographers, depending on their system, they would potentially have their paper notes from the old teletype kind of system. Judge, and then something else, I think that is a very good point, but something else to point out too is again, and I think I mentioned this, but I just want to say it again. The audio recording is not a certified copy. So I would agree, yes, that a final certified copy of a transcript from the hearing, yes, that is something that they would have a right to. But whatever tools, again, if it was the notes in the form of that, if it is a courtroom video, those type of things, as long as there is a copy that is given to the parties, that would satisfy the First Amendment. The transcript is a certified document? The transcript is a certified document and is actually treated differently under the Michigan court rules, yes. A transcript is a case record under MCR 8.108F1. So the certified final transcript is separate. It is a completely separate thing from the audio recording. So in some cases, in my understanding of some federal courts, there might be a video or audio recording that is made, but that the transcript is something that the party who wants a transcript has to pay to have done. If a transcript is made in Michigan State Court, who pays for the transcript to be done? That is paid for by the parties. The parties pay. So if one party wants a transcript and the other one says, I don't want to pay for it, then the party who wants it pays for it. Correct, Your Honor, yes.  If the transcript has already been created and is in the court file, you just pay a copy fee for it. Right. Or you can examine it for no fee, I presume. Correct. If the transcript is already part of the court file. A transcript isn't necessarily going to be generated for every, because I guess something to point out here, what we're talking about too is the audio for any type of hearing. So this could be a status conference on a child custody matter. There are audio recordings, as I'm sure just about anybody can picture, everything now is on some kind of audio or video. Then there might not be a transcript made of some interim hearing, correct? And in that point, would a party have a right to the audio? Again, I suppose in that situation it would be whether or not a transcript was available, whether or not they asked for a transcript to be made, it would be up to the local court. I think, Judge, I think the point would be here, in order to satisfy the First Amendment, they need to make something available. Yes. But in this case, if they're physically present at the hearing and they're giving a transcript on top of that, they can't claim that there's a First Amendment violation simply because they didn't get the video six months, or in this case, years after the fact. The important thing is that they have access. The problem is video often shows things that are different than the cold record. That's why we let district judges have the opportunity to make credibility findings. So that sort of opens up a real big can of worms, doesn't it, if this is a video recording as opposed to just a transcript. Judge, I guess the issue there would be whether or not the video is even available and not every court. But hypothesize it is available and the court says, no, we don't want to give you the video because the judge was getting real excited and nasty, and that doesn't show up in a transcript. And that could be true for the audio, too, couldn't it, that I could be really yelling at you, but the transcript would, unless the transcriber wrote, Judge is yelling, it wouldn't show up. Or that the witness is stuttering and breaking down, crying, and things of that sort. All of those things certainly are possible, I suppose. But based on the existing case law, in order to satisfy the First Amendment, the important thing and the key thing to look at is if the parties or in the cases that are cited by counsel, the key thing to look at is if the public is given access to the proceedings. And if there is a transcript that is generated, a certified transcript, they're given access to what happened in the proceedings. So that satisfies the First Amendment. I think where this does get complicated is that in any case where you have technology, and this was noted by the district court, that this is something that's changing, and that not every court is going to have the same technology or the computer space to store every single hearing. And you're looking at things that obviously are going to vary by court. The important thing is that access is given, and based on the facts of this case, both of the plaintiffs clearly had access to the proceedings because they were there and they had certified transcripts. Thank you. We've taken you over. I know I've let many people go over. All right. Thank you very much. Thank you. Counsel, if I can direct you a little bit. Your broad position here is that the First Amendment requires allowing access to what I will characterize as certain collateral items beyond a transcript. Maybe you wouldn't characterize it, but that's the way I'm thinking about it. So let me just mention three things and fit that into it. Stenographer's notes, which is then turned into a transcript, but the stenographer's notes might show the transcript is wrong. That's one. The old hush-a-phone where the person is talking and there's a record of that. Or thirdly, today, video. A person may be testifying in court, but there's also a video of it so that we can see whether they sneeze or scratch their behind or whatever during the testimony. Are all three of those, in your view, covered by the same First Amendment principle, or how do you draw the line? I draw the line in that Michigan has determined. If Michigan had a rule... You're sticking on Michigan. I'm with you if that's your point. Do you want to go any further? I don't. And let me just say, because... And the reason being is, and I guess let me explain why very quickly because I want to bring up one other point, is because Michigan has determined that these audio recordings, and this is just audio, we're not talking video, we're only talking audio for these courts, that these audio recordings are court records, you don't have to make the decision as to whether they're court records or not. Michigan's already done that for you. And because Michigan has designated these as court records, with that comes the responsibility of the requirements under the First Amendment. In your example of the hush dictaphone and the stenographer's notes, Michigan has not dictated those to be court records, and I think that's a major distinction. I want to make sure to be clear, because this is a confusion Brother Counsel, Mr. Curlew, has repeatedly said to this court and is briefed to this court, a local administrative order is not a judicial order. And I point you to the case of Alia, A-L-I-A versus Michigan Supreme Court, and that's 906 F. 2nd at 1002, which is a decision of this court from 1990, that says when a court is promulgating a rule or issuing an administrative order outside of a contested case, it is undertaking legislative, not judicial activity. And that's important because, the reason being that's so important is because in that instance, it is we can enforce First Amendment activities or unconstitutional acts by the administrators who use those laws. So for example, if Michigan legislature passed a law that says you can start a car on fire if it's speeding down the road, extreme example, right? You don't sue the legislator, you sue the officer that set the car ablaze in that instance. And you say that the officer violated the Constitution by utilizing that particular law. That's the same thing here. I would point this court for Mead and Heflin to the Durham case that's cited in my brief. Durham provides the ability that administrators who effectuate unconstitutional acts that have been adopted by the state as being the proper parties to sue because it's a redressability issue. The only last thing that the court will permit me 10 seconds would be is that you've all asked each of these two gentlemen here, who are two very smart attorneys, asked them to justify to you any reason why these audio recordings should not, on a practical matter, be provided. And despite asking them both directly that question, neither one of them provided you with an answer. It's because there is no practical difference. I thank the court for its time today. Thank you all for your argument. And this case will be submitted.